May it please the Court, my name is Jim Francis and along with my co-counsel Carrie Flitter who is seated at council table, I represent the appellant Rosella Harper. I request three minutes for rebuttal. Granted.  We seek reversal of the trial court's December 20th, 2006 order denying class certification in this case upon the ground that the court made a pivotal erroneous ruling of law and two clearly erroneous findings of fact. Before we, just so I make sure I don't forget it, what is the current status of the motion for summary judgment based on willfulness in the district court? It has, it's been stayed. Basically what happened, Your Honor, was after Safeco came down and while this 23F was pending, the defendants promptly moved for summary judgment. As the court I think is aware from the record and the docket, the discovery schedule was bifurcated in this case. So there was never an opportunity for the plaintiff to ever take merits discovery. So Judge O'Neill did not act on that motion. So I guess technically it's still pending this court's resolution. We're being asked to stay our decision in this case pending that. I'm aware of that. Yes. I'm aware of that. Wouldn't that make sense? I don't think so, Your Honor. Why not? For numerous reasons. Number one, I think that to stay this appeal and the certification of the certification decision at this point would undermine Rule 23F, the purposes for which it was created. It would undermine the policies underlying Rule 23 for prompt resolution of class certification decisions. If in any event, the basis for the motion to stay, as the court is aware, is the defendants' understanding that Safeco, the Supreme Court's decision in Safeco, somehow is going to end run around this case and kind of put it to bed. In fact, we think Safeco is actually good for the plaintiff's position in the sense that if the defendant's interpretation of Safeco is correct, meaning that the Supreme Court adopted an objective unreasonableness standard for willfulness under the FCRA, that's another common predominating issue for willfulness. So what the defendants, if anything, should want is they should want a certification so that when this case goes back down, if they're convinced they're going to win on willfulness, that would be a decision that would bind all of the class members on summary judgment. So if anything, given the fact that the Supreme Court has identified an objective standard for willfulness, if the evidence in this case proves there's willfulness or doesn't prove there's willfulness, it will affect every single class member. So we think, if anything. If I interrupted you, go back to where you were. So as I said, I think that this case has been pending for several years, and I think Rule 23 contemplates, and I don't think this is surprising, quick determinations on class certification. If I may just outline, before I get into the specific errors, if you remove the three erroneous rulings that we contend the district court made, the case that was presented for certification was this. It was a consumer class action brought under the Fair Credit Reporting Act based upon a single violation of a single statutory section with a claim that carries statutory. Just a minute. When you say a single violation, are the remarks or the marks in all these 3,000-odd-plus reports the same? Essentially, Your Honor, yes. I mean, that's part of your case? Correct, Your Honor. It's the same notation in everybody's report? Same practice, correct. In fact, there's a record that a plaintiff, now appellant, made at the district court level through expert opinion of Mr. Evan Hendricks, a nationally recognized expert who opined that the reporting practice, which Your Honor was asking about, was common to all class members, created a uniform inaccuracy. And the defendants, in a discovery motion in a letter that's in the record, admitted that the practice of reporting that notation, which Your Honor mentioned, was common to all class members. Aren't the facts that led to that notation different in each person's background? In other words, some might have co-written the mortgage note. Some may have been on another kind of transaction with a relative. Even though the notation is the same, aren't the underlying facts in each case possibly different? Not for liability or proof of willfulness, Your Honor. The reporting itself was the same for each person in terms of each one of the people in the class was somebody who had not filed for bankruptcy, but had an account with somebody who did. And it is the contention in the case, as was in the District of South Carolina Clark litigation, which was 1,000 times the size of this case, that that practice, putting a bankruptcy notation on the credit report of somebody that did not belong to them but belonged to somebody else, that practice violates the single section I mentioned, Section 1681EB of the Fair Credit Reporting Act. The defendants may prove that that practice doesn't violate the law. But regardless, in terms of class certification, that decision will bind every class member in the same way, one way or the other. Let me turn you to another issue, if I may. You claim that you don't have to show individual damages because there are statutory damages provided, and the statutory damages under the statute range from $100 to $1,000. What are the factors that distinguish whether somebody is entitled to $100, $1,000, or $500, or anything in between? We think that the statutory damage award would be uniform for all class members. Yeah, but when Congress says it should be between $100 and $1,000, what are the factors that lead to the decision where in that range they are entitled to? Well, the act, the FCRA doesn't specify what those factors are. And I'm asking you. What do you think? You represent the plaintiffs. Right. I think that the factors that the fact finder could look at, if you look, you could look at the Fair Debt Collection Practices Act, Section 1692, actually lists factors for statutory damages. As the Court is aware, the Fair Credit Reporting Act is a sister statute of the Fair Debt Collection Practices Act. Those factors would be, among other things, frequency of the violation, the persistence of the violation. And I can pull up that statute if I may, because I want to make sure that I recite them correctly. Are you suggesting that the factors are dependent on the reporters, or are they relevant to the individual plaintiff? Your Honor, I think it's clear that if you look at the factors under the FDCPA, and you look at the language under Section 1691N of the Fair Credit Reporting Act, where the willful claim is found, that it focuses, unlike other federal and state statutes, for example, the Pennsylvania Consumer Protection Law, which premises recovery on harm. The FCRA's statutory damage section focuses upon the defendant's conduct, not the harm to the consumer. The plain reading is that upon proof of a willful violation, the consumer is entitled to receive any actual damages or damages of not less and not more than $1,000. Well, we know that. And my question is, you're looking at the defendant's action, and I'm asking you why the Court wouldn't also take into consideration the situation of the plaintiff. Because I think the plain reading of this statute, like truth in lending and fair debt collection practices, doesn't focus on the harm to the consumer for statutory damages. None of those other statutes do. They focus on the defendant's conduct. And if you look at the factors that I outlined under Section 1692 of the Fair Debt Collection Practices Act, they are largely factors which focus upon the defendant's culpability and the defendant's violation. Unlike other statutes which focus on the harm to the consumer first to confer liability, this law specifically focuses upon the actor, the violation, and what the actor did, not the harm to the consumer. And I think that's supported by the plain reading. I think that's supported by the Seventh Circuit's decision in Murray v. GMAC. Judge Easterbrook addressed that issue. Well, Judge Easterbrook, if I recall, it's somewhere in here, specifically said that you shouldn't have a class action of opt-outs. Isn't that right? I'm not aware of that in the briefing that we have, Your Honor, that you can't bring a class of opt-outs. I thought Judge Easterbrook very clearly said somewhere in one of his opinions that you shouldn't have. But go ahead. Yeah, I'm not aware of that in the briefing that we have, Your Honor. I'd be happy to address it. It may not be in your brief, but go ahead. And I think that that's certainly not something ‑‑ I don't think that there is a de facto rule against opt-outs. I don't think this Court has ever held that. I think we've cited cases. And I think, if I may jump right to that, I think that's a very important point to make here because it's the big elephant standing on the roof, so to speak, is the fact that this is a class that had come from another litigation. And while the District Court didn't spend much time on it, the District Court did make a finding, a fact, which was not supported by the evidence at all, which was that somehow the evidence suggested that this group of people manifested a desire not to be part of a class action.  If anything, as we pointed out in the procedural history of the Clark litigation, this settlement that the plaintiff and the 3,700 other people in this class rejected was rejected by the District Court of South Carolina. So to create a de facto rule against de facto opt-out classes would punish this group just because they rejected a settlement that the District of South Carolina then rejected. That would punish them for that. And there was no basis. The only basis of record for the court to look at in determining why did this group of people opt out was the testimony of the representative plaintiff who said, this was a terrible deal for me. It provided nothing for me. And the reason she stepped forward was to remedy that. It wasn't that they had manifested or demonstrated a desire not to be part of a class action. Just that settlement. So we think that the court here kind of created a de facto rule against opt-out class actions. And it's something that should be looked at on a case-by-case basis. And given the facts here that the very settlement that they opted out from was rejected by the District of South Carolina, I think there's a lot of indicia and reliability for why this settlement was a – why they were reasonable to elect to opt out of that settlement. Thank you. As you know, your red light's on. Hold on. Do you have any questions? No. Polly, do you have any questions? Okay. Thank you.  We'll get you back on rebuttal. Thank you, Your Honor. Good morning, Your Honors. My name is Mark Cogan. I represent TransUnion in these proceedings. We have divided the argument time up between the three lawyers representing the three defendants, Mr. Harney in the middle and Mr. Hirschman on the end. It's strange, but that's fine. I want to ask you a question right to begin with. You sent us a 28-J letter dated October 24th, which covers an opinion in Murray, not the Murray case that the briefs talk about, but another Murray case, which was decided April 16th, 2008. Didn't you have an obligation to send us that opinion and that 28-J letter earlier rather than send it to us the week that we're sitting here? Your Honor, my question is... Excuse me. I've asked Mr. Cogan because Mr. Cogan signed the letter, and therefore I asked Mr. Cogan. I would say that we would have an obligation to bring it to the Court's attention as soon as we became aware of it. Well, didn't you have an obligation to look for current cases? Yes, we did. Go ahead. There's no argument. There's two things that I'd like to begin by addressing in my argument, and that is the fact that the information that is being reported is, in fact, accurate information. This is not a case in which the claim is being made that Ms. Harper or people in the class did not, in fact, become legally liable on the debts involved. And this is not a circumstance in which the assertion is being made that the co-obligor on the debt did not, in fact, file bankruptcy. Well, you know, that goes to liability, but the issue before us is class action or not. Yes, but that is where this gets a little slippery. Because in the district court, what they said was the reporting in that manner, although accurate, is misleading. And once one goes into misleading-ness, then accuracy can no longer be demonstrated on a class-wide basis. And we have – Well, help me with that. I don't understand that. Well, this legal standard is that in addition to being – if you don't show – first of all, you've got to show an inaccurate statement. Now, it can be false or it can be literally true, but stated in a manner that's likely to mislead. Now, that seems to me to be an objective standard. And here, everybody had included in bankruptcy and everybody had not filed – everybody in the class had not filed bankruptcy. Why is that not a common issue? Because when one – the question then becomes to what does one apply the objective standard to? And the answer is to some code. And what we have said is that they have made no proffer to demonstrate that that code was in fact misunderstood, so that a communication which is understood correctly by everybody who receives it is as maximally accurate as the statute should require. And they have no provision to prove that otherwise. Doesn't that go to liability? No, I think that goes to the ability to demonstrate that anyone was misled. And the circumstances under which the code itself is understood. So if they have no way of – if their contention is that there are some persons out there who misunderstand this because – But the test is not whether it was misunderstood. The chance is – the test is whether it created a risk of people being misled. Well, we believe that particularly since SAFCO came out that the statute ought to be construed in the context of the transactional realities of the information. I don't believe that – we believe that virtually all of the jargon in credit reporting is susceptible of being misled to mislead lay persons. The statute is not – which is one of the reasons I think why the statute controls the communication within professional communities, so that I would agree that virtually everything in a credit report, and particularly in the digitized versions, which are how this information moves in reality, would be misleading or capable of misleading somebody. The only way to know whether or not that is realistically so is to examine its operation in the marketplace. And they've made no proffer to demonstrate anything about that. And that is where we believe the accuracy component of this is not demonstratable. And I think they came forward to demonstrate that with no evidence whatsoever. And Judge O'Neill, in his discretion, felt that was lacking. The second point I wanted to bring up had to do with the opt-out class. Assuming that it's an opt-out, that opt-outs are fine, the idea that was proffered to Judge O'Neill was that, just as Mr. Francis said today, this was – the opt-outs thought this was a terrible deal. And they wanted damages. And when Judge O'Neill asked about that and said, well, if everybody is going to bring a causation and damages case, because that's why they opted out, how can you tell me that I can manage this? And then they did a quick about-face. And they said, even though that's the coherent idea that justifies this as a second-class action, we really don't expect that anybody is going to do what we said and what they've said today will be done. And Judge O'Neill kept pressing for an answer on that, and ultimately the whole harm-damages thing disappeared from the submissions. As a result of that, Judge O'Neill exercised his discretion and found this was not a manageable class. I would like something clarified on the record. I'm sorry? Yes, the settlement in the South Carolina case, which didn't require any money damages, required a modification of the reporting. I can't find anywhere what the modification was. Could you tell us as a result of the settlement? Yes, I can. As a result of the settlement, the defendants agreed not to report in a joint account the bankruptcy of another without indicating that in the code. In effect, what we did was we stopped making that report. So there's no more R or whatever? That little code? The code. The code is no longer used? That code is no longer used? That's correct. The code that's involved in this has not been used since July 2003. Thank you. Okay. That was the... Okay. And since you've cut up your time, I guess it's time to hear from your co-counsel. Your red light is on. Yes, I see. It's a very strange way, but that's all right. Excuse me? No, I said it's a... I've never seen that particular kind of cut up of time, but, you know, it's your time. Good morning, Your Honors. My name is Harold Hirschman. I represent Experian. And I'd like to simply address in the first instance, Your Honors, Judge Sloboda's remark. You'll find at page 42 of our brief a quotation from Judge Easterbrook in the Bridgestone case, which calls into question the concept of an opt-out class. Plaintiffs have ignored our Appendix 112, which cites, or in their Appendix 112, the statement that the people who were told that they could opt out were told also, you are not to be bounded by or entitled to the benefit from anything that happens in the litigation. And you are not precluded from filing your own lawsuit. It doesn't say you might want to do a class action. And I think Judge O'Neill, quite rightly, looking at that language said, it's sensible for me to conclude that the people who came out of this class action did not want to participate in a class action. And that was his response. Well, yes. But the Harper people say that the class action, the South Carolina class action, was resolved on the basis of no dollars, no money, and they want money. It's as simple as that. It is absolutely as simple as that. And that raises a series of implications for class actions in many other contexts. Because we have a situation where the plaintiffs essentially say, a federal judge found that for 2 million people, no money was a fair resolution of this. But 3,700 people say. No, I'm sorry. I have to stop you. The federal court never said that. The federal court just approved a settlement. I don't think there was any decision by the South Carolina court with respect to the merits or not of the class action, am I right? There was a statement in the court's conclusion that the merits were seriously contested in her judgment. And so there was an objection in that case that there should have been money. One of the objectors said that. And that objection was overruled. I know, but I think you're wasting your time. Because by definition, that judge can't buy an opt-out. That's the nature, you know, of the right to opt-out, isn't it? That is, he cannot find opt-outs. We absolutely agree. In a way, you know, that South Carolina court could. But we should pay attention, you know, to the findings of that court with respect to these opt-outs. But the question for this court and the question that Judge O'Neill faced was, what controversy are we presently dealing with? We're not dealing with the present controversy that faced the South Carolina court of this notation in a bunch of people's records. We're dealing with the past history of the consequences of that. And the question is, in dealing with that past history, is a class action a superior method, a superior method for addressing the dour needs? And as Your Honor has pointed out, there is no way to go from 100 to 1,000. Justice, there is no way to do that. Nobody argued that in the briefs. I'm sorry? I said no, until I asked the question. It wasn't argued in the briefs. Your Honor, what we said was that if what this was was like a criminal penalty, if it was a criminal penalty, you can have a penalty that goes from X to Y, and then the court is to use common law factors to determine that. But they say, no, no, no, no. It's not a criminal penalty, and it's actual. It's a substitute for actual damages and represents the same thing as actual damages. What determines? Did you agree? What are the determinative factors as to whether the statutory penalty should be 100, 1,000, or someplace in between? Your friend on the other side said you look to the actions of the defendants, the reporter, the credit reporters, not to the individual circumstances of the plaintiffs. Do you agree? Absolutely not. That is without any basis in the statute. Yeah, but how do we know? I mean, I don't know what either side can point us to to suggest what are those factors. But at that point, we get into serious constitutional issues, and the question is whether the serious constitutional issues are whether the statute is unconstitutionally vague because it doesn't tell us whose conduct is to be judged, how it is to be judged,  And so instead of having a single action where that could be determined and the court could lay out the parameters, such as in this case, this particular plaintiff was harmed 75 times by this bankruptcy reference and lost thousands of chances at credit, and she complained, for instance, and you just paid no attention to it. You blew her off. That, it seems to me, would be at least one scenario where a court could say, well, I'm supposed to go between 100 and 1,000, and I pick 1,000 because it's really bad here. Or it could be that, you know, there were hundreds and hundreds and hundreds of complaints that were ignored, and that would be on the defendant's conduct to make it better or worse. But critically, it has to go, as Your Honor pointed out earlier, on a case-by-case basis. And that, once that happens, Judge O'Neill is exactly right. He hasn't. He hasn't. But you're just giving us a conclusion. I'm sorry? You're not giving us a reason. You're giving us a conclusion. You're saying it has to go on the defendant's conduct. But the question, and I know you're saying it should go on the individual credit, well, the person involved. And how do we know that? Your Honor, I say to you that you go back to your Philbin opinion and your Newton opinions. And there you say, this comes out of the tort law. And we apply the general principles of tort law, which start with looking at the individual and the consequences. They want to turn this into a remarkable statute that Congress said, we don't care what happens to the people, that these plaintiffs can, as a group, challenge a practice of the credit reporting agencies, without showing anything about the consequences to themselves, without even saying that they were hurt. And we can then get a very, very significant monetary award. I think that the purpose of Rule 23 is not to create a method of end running a statute for a group. It is if there is a group. Assuming you're right about that statutory damages should be examined on a case-by-case basis, does that mean that the class action approach is not the superior way to determine liability in this case? Absolutely. I mean, normally, many more class actions than not, the remedy requires individual examination. But liability is nevertheless best addressed. It's superior to a thousand individual actions if the issues of liability are common, right? Yes. But here, the issue of injury and damages, as it would have to play out, are inextricably interwoven. There is no magic wand where you can say, without looking at your own record, without looking at the record of Ms. Harper, for instance, that something bad happened here, that somebody misunderstood this. And once you start down that road, there's no class. No, no. What Congress said was that your client had a duty to use all reasonable methods to avoid the risk of misleading people. And the first issue that all these class members have is whether what you said, you said it identically to all of them, whether that was said in a manner that is likely to mislead. If it is likely to mislead, then you ask whether the procedures that your client used were reasonable under the circumstances. Yeah. And that would seem to be a common issue with respect to all plaintiffs, with respect to each defendant. Well, but there, Your Honor, I think not, because we have the situation of having to examine these 3,700 people and see whether they're Clark-like plaintiffs. Mr. Clark lost an auto loan by a guy who misread the bankruptcy reference on a piece of paper. Okay? That's the Clark case. And there is nothing in the Harper case that resembles that. But if there was, if Ms. Harper was Clark, you can see that that's an individual determination. The guy down at the car agency didn't understand the piece of paper. No, no, no, no. What Congress said was we want to avoid an unreasonable risk of people being misled and getting hurt that way. And therefore, we are going to require that you use reasonable procedures to avoid that. And if you don't use reasonable procedures and there is a statement made that creates a risk of being misled, then a court could enjoin that, don't you think? And say, no, you can't do that because that Congress didn't want you to do that. But you have to start in this situation, not at the conclusion, that actually factually reporting that someone signed a note and took on added risk, they say that that already is prejudicial. It's like 403. Because it's bad news for the person that the coal abogor defaulted, we should eliminate that. Yeah, okay. I think we understand your position.  Thank you very much. Thank you, Your Honor. We'll hear from the remaining person who has three minutes. Is that right? My name is Tom Harney. My point is that before any certification of a class in this case, a court should decide whether under the recent Safeco decision we're entitled to summary judgment on the willful claim. Footnote 20 of Safeco specifically rejects any need for evidence as to the defendant's subjective intent or the care exercised by them. That footnote says to the extent that they argue that evidence of subjective bad faith can support a willfulness finding, even when the company's reading of the statute is objectively reasonable, their argument is unsound. They go on to say, whereas here the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violation. Are you arguing then for us to stay this pending a decision by the district court? Is that what you're telling us? That's our primary argument. And our secondary argument is that you should decide the willfulness issue yourself as a necessary part of determining whether a class action is superior here. Because one way or another, if we're going to get summary judgment on the willfulness claim, it's bad for judicial economy to go through the whole class thing. It's bad for the class to get bound by a case that's just going to be summary judgment. It's bad for us to have to pay for and face unnecessarily a class action. My guess is that the district court, as they usually do, is holding it up for us to make our decision first. I think it hasn't actually been stayed, but we just haven't had any action. And so I think that's exactly what's happening. But your decisions could be several fold. One could be that you say, I'm going to stay. Please go ahead and decide that motion for summary judgment. At which point, if there were any evidence, and the footnote I just read said there isn't any, but even if there were a record that needed to be developed, it could be developed. The court could allow some limited discovery to supplement the record. Suppose the district court doesn't grant your motion for summary judgment. Is it your motion for summary judgment? Yes, it is. Suppose the district court doesn't grant it. Wouldn't we be left with the class action issue all over again? You would. Well, not all over again. It would just not be decided. Yes, the class action issue would remain, but the summary judgment issue would then be also squarely before you because the trial judge would have denied it. In fact, if he grants it, it will also be squarely before you. But in a different – It would be the same appeal. We'd just now have that issue teed up in the trial court. And the alternative, I think, is for you to decide it now because I don't think there is any evidence needed. Well, wouldn't we have to see evidence before we decided the willfulness issue? The Supreme Court makes it clear that the evidence you need is evidence that's of record. The evidence you need is that we had a Sixth Circuit Court of Appeals decision who agreed with us for virtually the entire time of this class period. We had two other district courts that agreed with us. And these impartial circuit judges tested by litigation agreed with us. That doesn't necessarily require that they be right. But what it does mean is that how could we have been acting willfully under the statute? We've got cases galore that we can't grant summary judgment if we haven't given notice and given the other side an opportunity to develop a record. That's why I think the State is preferable, Your Honor. Although I do think that there's nothing that actually can be argued as needed. But isn't it better for the district court to decide that than this court? Probably yes. Interesting point. Thank you. Thank you. That's interesting. Interesting. Thank you. Judge Sloverter, the first thing I want to do is answer your question about the factors because I was unable at the time when you asked me to come up with the factors under the FDCPA. I will read from Section 1692K of the Fair Debt Collection Practices Act that the factors that are looked at for assessing statutory damages are the following. The frequency and persistence of noncompliance by the debt collector. In this case, we would argue the credit reporting agency. The nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional. Not one of those factors focuses upon the harm to the consumer. So we would argue that given the fact that the FDCPA is a sister statute of the FCRA, certainly that could provide some guidance given the fact that they were all passed at the same time and all deal with credit and debt-related issues. I want to have to correct one thing Mr. Kogan said. There was no statement from us, from the plaintiff, from counsel at the district court level, that the reporting here ever was accurate. In fact, the record, the only record on the issue of accuracy, was the expert opinion that Ms. Harper, the appellant in this case, proffered. Her expert, among other things, opined, and this is at Appendix 72, in reality, when a consumer report shows a trade line is included in bankruptcy, the file will also be produced with codes that convey a message that the consumer on whom the report is created was responsible for the bankruptcy payment status. The bankruptcy was scored by the agency as belonging to that particular consumer. So it has always been our contention that the accuracy here is that when this notation appears in the credit files, it's translated by the computerized credit world as this person's bankruptcy, not just a bankruptcy of the theoretical world. What is the period of time that your class claims the violation took place? Well, the violations would have gone back two years before April of 2000, because that was the Clark filing date. So it would be two years before that, and then … Well, if my subtraction is right, then it would be 1998 until, and do you agree that they stopped it after the South Carolina matter was settled, that you no longer had the code? Right. Well, we agree that … There's an end period. We didn't have an opportunity yet to take merits discovery, but it's our understanding that they followed through with the settlement, which was to change the way they reported it. But I think it's important to note for the court, which is why we would need merits discovery, some of this is a ruse here. This notion of reporting bankruptcy and whether they had a right or duty to report it, there is already another method in place that the bureaus had at the time. It was called the METRO II format. And what the METRO II format did was allow a credit grantor to report a joint … I wasn't asking a question about the merits, because you're really talking about the merits of your claim. I was just trying to find out if we're talking about a closed period, and if you agree that the settlement did stop the particular reporting that is at issue here. And I gather the answer is yes. I think yes. Which would have been a fast answer. The answer is yes. The answer is yes. If I may just have 30 more seconds to quickly run through that. There are a lot of people here and a lot of cases. Thank you. Your Honor, I think what the court was referring to about the question about Judge Easterbrook and opt-out classes … And it was in the brief. I'm sort of surprised that you said you weren't aware of it, because it's just where he said, page 42. Well, what I understood, Your Honor, to say, maybe I understood it incorrectly, was that Judge Easterbrook said you can't have a class based on opt-outs. I think if Your Honor is referring to the Bridgestone-Firestone litigation, that's entirely different for one reason. Those are subsequent class actions, seeking to get certified by going around the back of the court that initially looked at. Here, that doesn't apply. We had a court that certified a class action. So it doesn't apply at all. There's no end run around a district court decision. Thank you. I think that's 30 seconds. Thank you, Your Honor.